UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

ABRAHAM B. DIAZ, III,

                    Defendant.

NO. CR-05-6055-EFS

**ORDER RULING ON DEFENDANT'S
SEVERAL PRETRIAL MOTIONS**

     On January 27, 2006, a pretrial conference was held in the above-
captioned matter.  Defendant Abraham Diaz was represented by Rebecca
Pennell.  James Hagarty appeared on behalf of the Government. During this
conference, the parties conducted a evidentiary hearing in connection
with Defendant's Motion to Suppress, during which sworn testimony was
provided by Officer Thatsana.  After reviewing the submitted materials,
relevant authority, and considering the evidence presented by the
parties, the Court is fully informed on the issues set forth in
Defendants' pretrial motions.  This Order serves to memorialize and
supplement the rulings rendered by the Court on those motions during the
pretrial hearing.

///

///

ORDER ~ 1

# I. Background[1]

On October 23, 2005, Officers Thatsana and Lee were patrolling for vehicular noise disturbances in Pasco, Washington, with an instrument capable of measuring the distance between the officers and vehicles emitting noise. At approximately 5:43 p.m., the officers heard a loud booming noise, which they concluded was coming from a Nissan that had just passed their position 198 feet away. In response to this noise violation, Officer Thatsana pursued the Nissan in his police vehicle.

The Nissan, which was being driven by Defendant, was stopped by Officer Thatsana for violating Pasco City Ordinance 9.61.020(C)(12), which prohibits vehicular audio systems from projecting sound further than seventy-five feet from their vehicle. After stopping the Nissan, Officer Thatsana asked Defendant to produce his driver's license. Defendant told the officer he had left his license at home. The officer then asked Defendant to produce any form of photo identification. Defendant indicated he did not have photo identification with him. The officer then asked Defendant for proof of his vehicle's registration. Defendant stated the vehicle belonged to his wife and he did not know where the registration card was.

Officer Thatsana then asked Defendant to state his name. In response, Defendant told the officer his name was Climente Trevino.

---

[1] All facts contained in this Order are taken from testimony provided by Officer Thatsana during the January 27, 2006, evidentiary hearing and the police report prepared by Officer Thatsana following his arrest of Defendant on October 23, 2005. (Ct. Rec. 34-2.)

ORDER ~ 2

Officer Thatsana then asked Defendant to spell his name.  According to Officer Thatsana, Defendant then began spelling "Climente Trevino" "slowly" and that it "appeared [Defendant] was thinking on how to spell his name."  Officer Thatsana noticed Defendant was holding what appeared to be a man's wallet, which the officer then asked about.  Defendant informed the officer that the wallet belonged to his wife.  Officer Thatsana noticed the wallet contained what appeared to be photo identification and social security cards.  Officer Thatsana asked Defendant to explain who the cards belonged to.  Defendant reported that the cards in the wallet were his brother's.  Officer Thatsama then returned to his police vehicle to contact dispatch for report on "Climente Trevino."

While Officer Thatsana was away, at his vehicle, Officer Granger, who had arrived after the initial stop, approached Defendant and asked for his social security number.  Defendant indicated he did not remember what his social security number was.  Officer Thatsana then returned and asked whether he could look at the wallet Defendant had in his hand, which Defendant consented to.  As Officer Thatsana examined the wallet, he noticed the identification card he had earlier seen was missing.  Officer Thatsana asked Defendant if he knew where the identification card had gone and Defendant responded that he did not know.  Officer Granger then informed Officer Thatsana that Defendant had a tattoo of the word "Diaz" on his forearm.

At this point, Officer Thatsana ordered Defendant out of his vehicle and informed Defendant he was being detained.  After Defendant was out of his vehicle, Officer Thatsana told Defendant he was about to pat him

ORDER ~ 3

down and asked Defendant whether he had anything on him the officer should be concerned about.[2] Defendant answered that he had a pipe in his right front pants pocket, which he indicated was used to smoke marijuana. Upon learning of the pipe, Officer Thatsana patted Defendant's right front pants pocket, where he felt a hard object he believed was the pipe. Thereafter, Officer Thatsana removed the pipe from Defendant's pocket and placed Defendant under arrest, presumably for possession of drug paraphernalia, but also potentially for driving a vehicle with no valid operator's license.

Following the arrest, Defendant was put in Officer Thatsana's police vehicle and a search was conducted of Defendant's Nissan. During the vehicle search, a gun was found hidden in a door. Defendant is now charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on the gun found during the above described stop and search.

## II. Analysis

Defendant moves the Court to suppress the gun found in his vehicle subsequent to his arrest on two bases: (1) Officer Thatsana's pat down of Defendant was unlawful and (2) there was no lawful basis to search

---

[2] Officer Thatsana testified he removed Defendant from the vehicle with the intent of moving Defendant to the back of his police vehicle so he could continue his investigation of Defendant's identity in a secure and controlled environment. Officer Thatsana also testified he intended to pat Defendant down as an additional officer safety precaution.

ORDER ~ 4

Defendant's entire vehicle incident to his arrest.  These issues are separately addressed below.

**A. Was Officer Thatsana's Frisk Unlawful?[3]**

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvisu*, 534 U.S. 266, 273 (2002).  When a law enforcement officer has probable cause to believe a suspect has committed a traffic infraction, that officer's stop and temporary detention of the suspect's vehicle is reasonable under the Fourth Amendment, even if the ultimate charge stemming from the stop is unrelated to the reasons for the traffic stop. *Whren v. United States*, 517 U.S. 806, 818-19 (1996).

"Police officers are entitled to employ reasonable methods to protect themselves and other in potentially dangerous situations." *United States v. Willis*, 431 F.3d 709, 717 (2005) (quoting *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056-57 (9th Cir. 1995)).  For this reason, law enforcement officers may, "within reason, search the area and question [the suspect] about weapons for their own safety." *Id.*  Officer are also permitted, as a matter of course, to order any driver and/or passenger, who have been lawfully stopped, to exit their respective vehicles. *Maryland v. Wilson*, 519 U.S. 408, 409 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)).  In addition, officers may frisk "a driver

---

[3] Defendant does not dispute the lawfulness of Officer Thatsana's traffic stop, which was based on the noise violation witnessed by Officers Thatsana and Lee.

ORDER ~ 5

and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988) ("The standard for justifying a frisk is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger.")  In determining whether an officer's pre-frisk suspicion is reasonable, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

In this case, Defendant argues Officer Thatsana's pat down was unlawful because the officer had no reasonable suspicion to believe Defendant was armed and dangerous.  In support of this proposition, Defendant points to Officer Thatsana's admittance that he had no reason to believe Defendant was armed, dangerous, a flight risk, or under the influence of drugs or alcohol.  Defendant also stresses Officer Thatsana admitted he did not witness Defendant make any threatening or furtive moves or gestures that would suggest a threat of violence.  Finally, Defendant points to the innocuous nature of the underlying reason for the stop - a noise violation - to further highlight Officer Thatsana lack of a basis to suspect Defendant was armed and dangerous.

In opposition, the Government emphasizes the reasonableness of Officer Thatsana's decision to remove Defendant from his vehicle and conduct a weapons search in light of the misleading information Defendant continued to provide regarding his identity.  In general, according to the Government, a decision to *not* pat down Defendant, a person Officer

Thatsana had (1) more than sufficient evidence to suspect was attempting to hide his identify and (2) probable cause to arrest for operating a motor vehicle without a valid driver's licence, would have been unwise and unsafe and reasonably could have led to Officer Thatsana's injury.

After considering the parties' arguments and reviewing the evidence as presented in the parties' briefs and during the evidentiary hearing, the Court denies Defendant's Motion to Suppress, finding Officer Thatsana's decision to initiate a *Terry* search was reasonably designed to protect himself from a potentially dangerous situation and consequently permitted under the Fourth Amendment. The Court bases its ruling on the circumstances faced by Officer Thatsana prior to the search. First, Officer Thatsana knew Defendant had just committed a misdemeanor (driving with no valid operator's license). Second, Officer Thatsana knew Defendant (1) claimed to not have any photo identification on him, (2) claimed to not know his social security number, (3) claimed to not know where to find the vehicle's registration materials, (4) claimed to not know where the identification card, which had been in the wallet he was holding, had gone, (5) spelled his alleged name slowly, implying Defendant had not been asked to spell the name "Climente Trevino" on many prior occasions, and (6) had the name "Diaz" tattooed on his right forearm, suggesting Defendant's true name was Diaz and therefore, reasonably concluded Defendant was attempting to conceal his identity. These facts justified Defendant's prolonged detention and Officer's Thatsana's continuing investigation, which rightfully included Defendant's removal from his vehicle and the officer's questioning of

ORDER ~ 7

Defendant about weapons. *See Willis*, 431 F.3d at 717; *Wilson*, 519 U.S. at 409.

Once Defendant was removed from the Nissan, Officer Thatsana was authorized to use reasonable measures to ensure his safety as he continued to investigate Defendant's identity. This included a pat down of the Defendant, an individual Officer Thatsana knew had just committed a misdemeanor and reasonably could have inferred was wanted on separate charges or in connection with a criminal investigation based on his refusal to provide information relating to his identify. Accordingly, until Officer Thatsana was able to ascertain Defendant's true identity and learn about his criminal history, he was entitled to ensure his investigation was conducted in a secure environment in which he did not have to fear Defendant would reach for a concealed weapon and jeopardize the officer's safety. Thus, this portion of Defendant's Motion to Suppress is denied.

**B. Was Officer Thatsana Entitled to Search Defendant's Vehicle?**

The Fourth Amendment permits the full search of the passenger compartment of a vehicle incident to the driver's lawful arrest. *New York v. Belton*, 453 U.S. 454 (1981). Here, because Defendant was lawfully arrested, Officer Thatsana was authorized to search the Nissan's passenger compartment incident to that arrest. For this reason, the remainder of Defendant's Motion to Suppress is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Suppress **(Ct. Rec. 33)** is **DENIED.**

2. Defendant's Motion to Dismiss **(Ct. Rec. 30)** is **DENIED.** *See United States v. Murillo*, 422 F.3d 1152 (9th Cir. 2005).

ORDER ~ 8

1      3.  Defendant's Motion to Disclose Evidence Pursuant to Rule 404 and

2  609 **(Ct. Rec. 38)** is **GRANTED.**

3      4.  Defendant's Motion to Compel Grand Jury Transcripts **(Ct. Rec.**

4  **36)** is **GRANTED.**  The requested grand jury transcripts shall be produced

5  no later than **one week prior to trial.**

6      5.  Defendant's Motion for Discovery **(Ct. Rec. 40)** is **GRANTED.**

7      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

8  this order and to provide copies to counsel.

9      **DATED** this ___31st___ day of January, 2006.

10

11                      S/ Edward F. Shea
                      _____
12                      EDWARD F. SHEA
                  United States District Judge

13

14  Q:\Criminal\2005\6055.PTC.wpd

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 9